Dennis F. Dunne, Esq.
Andrew M. Leblanc, Esq.
Tyson M. Lomazow, Esq.
Lauren C. Doyle, Esq.
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| OneWeb Global Limited, *et al.* | Case No. 20-[_____] ( ) |
| Debtors.[1] | (Joint Administration Pending) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS, AND (II) GRANTING RELATED RELIEF

OneWeb Global Limited and its above-captioned affiliates, as debtors and debtors

in possession (collectively, the "Debtors"), respectfully represent as follows in support of this

motion (the "Motion"):[2]

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if any, are:   OneWeb Global Limited (N/A); OneWeb Holdings LLC (5429); OneWeb Communications Limited (9487); WorldVu Satellites Limited (7802); WorldVu Development LLC (9067); WorldVu JV Holdings LLC (N/A); 1021823 B.C. LTD (8609); Network Access Associates Limited (8566); OneWeb Limited (8662); WorldVu South Africa (Pty) Ltd. (1867); OneWeb Chile SpA (2336); WorldVu Australia Pty Ltd. (5436); WorldVu Unipessoal Lda. (2455); OneWeb Norway AS (0209); OneWeb ApS (9191); OneWeb Network Access Holdings Limited (8580); OneWeb G.K. (1396); OneWeb Ltd (8661); WorldVu Mexico S. DE R. L. DE C.V. (1234).  The Debtors' headquarters is located at 195 Wood Lane, West Works Building, 3rd Floor, London, W12 7FQ, UK.

[2]    Information regarding the Debtors' business, capital structure, the circumstances leading to the commencement of these cases, and the facts and circumstances supporting the relief requested in this Motion is set forth in the *Declaration of Thomas Whayne in Support of Chapter 11 Petitions and First*

## Relief Requested

1.    The Debtors seek entry of interim and final orders, substantially in the respective forms attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and the "Final Order," respectively), (a) authorizing, but not directing, the Debtors to pay, in their sole discretion, prepetition claims of certain vendors who are critical to maintaining the going concern value of the Debtors' enterprise; and (b) granting certain related relief described herein.  The Debtors also request that this Court schedule a final hearing to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

2.    This   Court   has   jurisdiction   over   this   matter   pursuant   to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.    Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory bases for the relief requested herein are sections 105, 363, 364, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules").

---

*Day Pleadings* (the "First Day Declaration"), which is being filed contemporaneously herewith and is incorporated herein by reference.

**Background**

5.     On March 27, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.     The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have requested the joint administration of these cases for procedural purposes. No trustee, examiner, or statutory committee of unsecured creditors has been appointed in these cases.

7.     Founded in 2012, OneWeb is a global communications company developing a low-Earth orbit ("LEO") satellite constellation system and associated ground infrastructure, including terrestrial gateways ("Satellite Network Portals", or "SNPs") and end-user terminals, capable of delivering communication services for use by consumers, businesses, governmental entities, and institutions, including schools, hospitals, and other end-users whether on the ground, in the air, or at sea (the "OneWeb System"). OneWeb's business consists of the development of the OneWeb System, which has included the development of small-next generation satellites that have been mass-produced through a joint venture and the development of specialized connections between the satellite system and the internet and other communications networks through the SNPs. In order to operate the OneWeb System, the Company holds various authorizations and licenses, including for the use of Ku-band and Ka-band radio-frequency spectrum on a global basis, and domestic market access / services authorizations necessary for operating the satellites and associated ground infrastructure. The Debtors have their corporate headquarters in London, United Kingdom. As of the Petition Date, the Debtors' outstanding funded debt obligations totaled approximately $1.733 billion in issued 12.5% notes under that certain Amended and Restated Note Purchase Agreement, dated as of March 18, 2019.

## Critical Vendors

8.      As noted in the First Day Declaration, in the days prior to the Petition Date the Debtors conducted a strategic reduction in force of 90% of their historic workforce, and transitioned from further developing the OneWeb System to simply maintaining their existing operations and assets amidst a challenging economic environment.  In connection with this process and going forward, the Debtors expect to utilize a drastically reduced number of vendors than they have historically.  Nonetheless, there are a vendors whose services are critical to maintaining the Debtors' operations, and without whose services the Debtors would not be able to operate their businesses or safely maintain their assets (collectively, the "Critical Vendors").[3]  Among other things, these Critical Vendors provide information and technology services, utility services, web services, and other services necessary for the Debtors to continue their remaining businesses, including providing the services necessary for the Debtors to continue to safely control their launched satellites and delivering any of the Debtors' assets that they are currently storing, transporting or warehousing.

9.      The Debtors, working with their advisors, identified the list of Critical Vendors based upon a review of their books and records, historical practice, and consultation with personnel responsible for maintaining continued operations.  Given the recent drastic change in their operations (and the delays in receiving goods, services, information and invoices due to the global COVID-19 pandemic), the Debtors will continue to evaluate the list of Critical Vendors  to determine any necessary additions or deletions.  In order to identify the Critical Vendors, the Debtors considered (and will continue to consider) a variety of factors, including:

---

[3]     A list of the Critical Vendors (and any proposed additions thereto in the future) will be made available to the Court and the Office of the United States Trustee for the Southern District of New York.  In connection with a proposed addition, the Debtors will update the list prior to making a payment on a Critical Vendor Claim.  In no event shall an insider be a Critical Vendor.

      i.      whether a service provider is a sole- or limited-source provider of services critical to the Debtors' operations;

      ii.     whether alternative service providers are available that can provide requisite services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

     iii.     the degree to which replacement costs (including pricing, professional fees, and lost revenue) exceed the amount of a provider's prepetition claim;

     iv.     whether failure to pay all or part of a particular provider's claim could cause the provider to refuse to provide critical services postpetition.

10.    In light of the critical importance of the services provided by the Critical Vendors, and to ensure that the Debtors' global operations continue uninterrupted, the Debtors request authorization (subject to the immediately following paragraph) to pay claims of the Critical Vendors (the "Critical Vendor Claims") that: (a) were accrued or incurred in the ordinary course prepetition but were unpaid as of the Petition Date (or were paid in an amount less than actually owed); (b) were paid prepetition but not received by the intended Critical Vendor; or (c) were incurred for prepetition periods, but did not become due until after the Petition Date. The Debtors estimate that the Critical Vendor Claims total less than $3 million (the "Final Amount"), of which no more than $500,000 (the "Interim Amount") would need to be paid prior to the entry of the Final Order. The Final Amount represents less than 1% of the Debtors' prepetition unsecured claims as reflected in their books and records.

11.    The Debtors have tasked a core group of executives, advisors, and employees with reviewing, assessing, and potentially recommending payment on account of, specific Critical Vendor Claims. The Debtors seek the authorization to honor the Critical Vendor Claims only where the Debtors determine, in their business judgment, that the applicable Critical Vendor may discontinue its services notwithstanding section 362(a) of the Bankruptcy Code or

5

may otherwise inflict immediate and irreparable harm on the Debtors by refusing to comply with its contractual obligations. Such harm would likely far outweigh the cost of payment of the applicable Critical Vendor Claims.

12.     Under the Interim Order, the Debtors seek the authority to pay the Critical Vendor Claims only up to the Interim Amount. Under the Final Order, the Debtors seek the authority to pay the Critical Vendors Claims only up to the Final Amount during the pendency of these cases.

**Customary Trade Terms**

13.     The Debtors will use commercially reasonable efforts to condition payment of the Critical Vendor Claims upon each applicable Critical Vendor's agreement to continue providing its services on the terms that were in place 120 days prior to the Petition Date or are otherwise acceptable to the Debtors in light of customary industry practices (collectively, the "Customary Trade Terms").

14.     In addition, the Debtors request that if any Critical Vendor accepts payment pursuant to the relief requested by this Motion and thereafter fails to provide services to the Debtors on the Customary Trade Terms, then: (a) such payment may be deemed to be an improper postpetition transfer on account of a prepetition claim, and therefore, immediately recoverable by the Debtors in cash upon written request; (b) upon recovery of the payment by the Debtors, the previously paid prepetition claim shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such Critical Vendor, the Debtors may elect to instead apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance and such Critical Vendor will be required to repay to the Debtors the paid amount that exceeds such outstanding postpetition balance.

**Basis for Relief**

I.    **This Court Should Grant the Relief Requested in this Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.**

15.    Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so.  See In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims when an appropriate business justification exists); see also Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.), 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).

16.    Section 105(a) codifies this Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business.  See, e.g., In re C.A.F. Bindery, Inc., 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); see also In re Fin. News Network Inc., 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow preplan payments of prepetition obligations where such payments are critical to the debtor's reorganization); Ionosphere Clubs, 98 B.R. at 175-76 (noting that the bankruptcy court's ability to authorize payment of pre-petition debt under 105(a) is "not a novel concept").

17.    Valid business justification exists for authorizing the Debtors to satisfy the Critical Vendor Claims as it will allow the Debtors to prevent the value-destructive disruption of their business operations.  In addition, certain of the Critical Vendors have possession of the

7

Debtors' property and may assert possessory liens thereon (such Critical Vendors, the "Lienholders").[4]  Under section 362(b)(3) of the Bankruptcy Code, the act of perfecting such possessory liens (to the extent consistent with section 546(b) of the Bankruptcy Code) is expressly excluded from the automatic stay.[5]

18.    The Debtors' ability to maintain access to their inventory and equipment is critical to the continued viability of their business operations.  The Debtors are concerned that, unless paid, the Lienholders are likely to enforce their possessory liens, and may refuse to deliver or release the Debtors' property in their possession.  Such retention of the Debtors' property would severely disrupt the Debtors' operations and affect their ability to reorganize.

19.    Furthermore, many of the Critical Vendors are foreign companies that provide services outside of, and have no meaningful connections to, the United States (the "Foreign Critical Vendors").  These Foreign Critical Vendors are specialists in their locales, making them integral to maintain the Debtors' operations and businesses around the world.  The Foreign Critical Vendors may disregard the automatic stay or section 362 of the Bankruptcy Code and institute lawsuits in foreign courts and/or exercise other remedies in foreign jurisdictions based on the Debtors' failure to honor their Critical Vendor Claims in the ordinary course.[6]  Moreover,

---

[4]    For instance, the Debtors have inventory in two warehouses in the United States and one in the United Kingdom.

[5]    *See* 11 U.S.C. § 546(b)(1)(A) (providing that a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection").

[6]    Those of the Foreign Critical Vendors that are utilities for purposes of section 366 of the Bankruptcy Code may similarly not consider themselves bound by the provisions of section 366 of the Bankruptcy Code and the Order approving *Debtors' Motion for Entry of Interim and Final Orders (I) Approving Proposed form of Adequate Assurance of Payment to Utility Providers, (II) Establishing Procedures for Determining Adequate Assurance of Payment for Future Utility Services, and (III) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Services* that the Debtors are seeking simultaneously herewith.

seeking to enforce the Court's orders in these creditors' home countries may be unduly time-consuming and expensive.

20.    Thus, allowing the Debtors to pay the Critical Vendor Claims is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors. See Bank of Am. Nat'l Trust Savs. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 453 (1999). Based on these circumstances, the Debtors submit that the relief requested herein represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code.

21.    Courts in this district have routinely authorize payments to critical vendors under similar circumstances.  See, e.g., In re Windstream Holdings, Inc., Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. Apr. 22, 2019); In re Aegean Marine Petrol. Network Inc., Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Dec. 6, 2018) (approving payment of prepetition claims of critical vendors on the basis that they could refuse to deliver or return the debtors' goods); In re Nine West Holdings, Inc., Case No. 18-10497 (SCC) (Bankr. S.D.N.Y. May 7, 2018) (same); In re Avaya Inc., Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. Feb. 10, 2017) (same); In re BCBG Max Azria Glob. Holdings, LLC, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017) (same); In re Sabine Oil & Gas Corp., Case No. 15-11835 (SCC) (Bankr. S.D.N.Y. Oct. 15, 2015) (same).

## Motion Practice

22.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion.  Accordingly, the Debtors submit that this Motion satisfies Local Bankruptcy Rule 9013-1(a).

## Processing of Checks and Electronic Fund Transfers Should be Authorized

23.     The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of the consensual use of cash collateral.  In addition, under the Debtors' cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Critical Vendor Claims. Accordingly, the Debtors believe there is minimal risk that checks or wire transfer requests that the Court has not authorized will be inadvertently paid.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion; provided that sufficient funds are on deposit in the applicable bank accounts to cover such payments.

## The Requirements of Bankruptcy Rule 6003 are Satisfied

24.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  For the reasons discussed above, authorizing the Debtors to pay prepetition Critical Vendor Claims, and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these cases smoothly.  Failure to receive such authorization and other relief during the first 21 days of these cases would severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Waiver of Bankruptcy Rule 6004(a) and (h)

25.     To implement the requested relief, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay of an order authorizing

the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the
First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable
harm to the Debtors.   Accordingly, ample cause exists to justify the waiver of the notice
requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay imposed by
Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

### Reservation of Rights

26.     Nothing contained herein or any actions taken pursuant to such relief is
intended or should be construed as:  (a) an admission as to the validity of any prepetition claim
against a Debtor; (b) a waiver of the Debtors' right to dispute any prepetition claim on any grounds;
(c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any
particular claim is of a type specified in this Motion or any order granting the relief requested by
this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease
pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the
Bankruptcy Code or any other applicable law.

### Notice

27.     The Debtors will provide notice of this Motion to (a) the Office of the
United States Trustee for the Southern District of New York, Attn: Richard Morrissey and Shannon
Scott; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated
basis); (c) counsel to SoftBank, Morrison and Foerster LLP, 250 West 55th Street, New York, NY,
10019, Attn: Gary Lee and Todd Goren; (d) counsel to GLAS, as collateral agent, Arnold & Porter
Kaye Scholer LLP, 250 West 55th Street, New York, NY, 10019, Attn: Jonathan Levine; (e) the
Securities and Exchange Commission; (f) the Internal Revenue Service; (g) the Federal
Communication Commission; (h)  the Office of Communication (United Kingdom); (i) the United
States Attorney's Office for the Southern District of New York; (j) the office of the attorneys

11

general for the states in which the Debtors operate; (k) the Critical Vendors and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The Debtors respectfully submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## **No Previous Request**

28.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request entry of the Interim Order and the

Final Order granting the relief requested herein and such other and further relief as the Court may

deem proper.

Dated:  March 27, 2020
         New York, New York

/s/ Dennis F. Dunne
Dennis F. Dunne, Esq.
Andrew M. Leblanc, Esq.
Tyson M. Lomazow, Esq.
Lauren C. Doyle, Esq.
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone:     (212) 530-5000
Facsimile:     (212) 530-5219
Email:         ddunne@milbank.com
               aleblanc@milbank.com
               tlomazow@milbank.com
               ldoyle@milbank.com

*Proposed Counsel for Debtors*
*and Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| OneWeb Global Limited, *et al.* | Case No. 20-[_____] ( ) |
| Debtors.[1] | (Joint Administration Pending) |

## INTERIM ORDER AUTHORIZING
## THE DEBTORS TO PAY CERTAIN PREPETITION
## CLAIMS OF CRITICAL VENDORS AND GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors in possession for entry of

an interim order: (a) authorizing, but not directing, the Debtors to pay the Critical Vendor Claims

and (b) granting certain related relief, all as more fully set forth in the Motion; and upon the Motion

and the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States*

*District Court for the Southern District of New York*, dated January 31, 2012; and that this Court

may enter a final order consistent with Article III of the United States Constitution; and this Court

having found that venue of this proceeding and the Motion in this district is proper pursuant to 28

U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to

28 U.S.C. § 157(b)(2); and this Court having found that the relief requested in the Motion is in the

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if any, are:  OneWeb Global Limited (N/A); OneWeb Holdings LLC (5429); OneWeb Communications Limited (9487); WorldVu Satellites Limited (7802); WorldVu Development LLC (9067); WorldVu JV Holdings LLC (N/A); 1021823 B.C. LTD (8609); Network Access Associates Limited (8566); OneWeb Limited (8662); WorldVu South Africa (Pty) Ltd. (1867); OneWeb Chile SpA (2336); WorldVu Australia Pty Ltd. (5436); WorldVu Unipessoal Lda. (2455); OneWeb Norway AS (0209); OneWeb ApS (9191); OneWeb Network Access Holdings Limited (8580); OneWeb G.K. (1396); OneWeb Ltd (8661); WorldVu Mexico S. DE R. L. DE C.V. (1234).  The Debtors' headquarters is located at 195 Wood Lane, West Works Building, 3rd Floor, London, W12 7FQ, UK.
[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

1

best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other or further notice need be provided; and upon the record of the hearing held before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT:**

1.      The Motion is granted on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed, to pay, in the ordinary course of business, the Critical Vendor Claims up to the Interim Amount, as may be necessary, as determined in the Debtors' sole discretion, to secure any Critical Vendor's agreement to continue business with the Debtors on the Customary Trade Terms.

3.      If a Critical Vendor accepts payment pursuant to this Interim Order and thereafter fails to provide its services on the Customary Trade Terms: (a) such payment shall be deemed to be an improper postpetition transfer on account of a prepetition claim, immediately recoverable by the Debtors in cash upon written request; (b) upon recovery of such payment by the Debtors, the prepetition claim of such Critical Vendor shall be reinstated as if the payment had not been made; and (c) if an outstanding postpetition balance is due from the Debtors to such Critical Vendor, the Debtors are authorized, but not required, to apply any payment made pursuant to this Interim Order to such outstanding postpetition balance, and such Critical Vendor shall be required to repay to the Debtors any paid amount that exceeds such then outstanding postpetition balance.

4.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized,

2

but not directed, to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order, without any duty of further inquiry and without liability for following the Debtors' instructions.

5.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against any Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

6.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these cases with respect to prepetition amounts owed in connection with the relief granted herein.

7.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

8.     The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of points and authorities in connection with the Motion is waived.

9.     Notice of the Motion as described therein shall be deemed good and sufficient notice, and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

3

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

12.     The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2019, at ___: ___ __.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time on _____, _____, and served on the following parties: (a)  (collectively, the "Notice Parties").

13.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: _____
White Plains, New York                          _____
                                                UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| OneWeb Global Limited, *et al.* | Case No. 20-[_____] ( ) |
| Debtors.[1] | (Joint Administration Pending) |

**FINAL ORDER AUTHORIZING**
**THE DEBTORS TO PAY CERTAIN PREPETITION**
**CLAIMS OF CRITICAL VENDORS AND GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors in possession for entry of

an final order: (a) authorizing, but not directing, the Debtors to pay the Critical Vendors Caims

and (b) granting certain related relief, all as more fully set forth in the Motion; and upon the Motion

and the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States*

*District Court for the Southern District of New York*, dated January 31, 2012; and that this Court

may enter a final order consistent with Article III of the United States Constitution; and this Court

having found that venue of this proceeding and the Motion in this district is proper pursuant to 28

U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to

28 U.S.C. § 157(b)(2); and this Court having found that the relief requested in the Motion is in the

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if any, are:   OneWeb Global Limited (N/A); OneWeb Holdings LLC (5429); OneWeb Communications Limited (9487); WorldVu Satellites Limited (7802); WorldVu Development LLC (9067); WorldVu JV Holdings LLC (N/A); 1021823 B.C. LTD (8609); Network Access Associates Limited (8566); OneWeb Limited (8662); WorldVu South Africa (Pty) Ltd. (1867); OneWeb Chile SpA (2336); WorldVu Australia Pty Ltd. (5436); WorldVu Unipessoal Lda. (2455); OneWeb Norway AS (0209); OneWeb ApS (9191); OneWeb Network Access Holdings Limited (8580); OneWeb G.K. (1396); OneWeb Ltd (8661); WorldVu Mexico S. DE R. L. DE C.V. (1234).  The Debtors' headquarters is located at 195 Wood Lane, West Works Building, 3rd Floor, London, W12 7FQ, UK.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other or further notice need be provided; and upon the record of the hearing held before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT:**

1.      The Motion is granted on an final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to pay, in the ordinary course of business, the Critical Vendor Claims up to the Final Amount, as may be necessary, as determined in the Debtors' sole discretion, to secure any Critical Vendor's agreement to continue business with the Debtors on the Customary Trade Terms.

3.      If a Critical Vendor accepts payment pursuant to this Final Order and thereafter fails to provide its services on the on Customary Trade Terms: (a) such payment shall be deemed to be an improper postpetition transfer on account of a prepetition claim, and therefore, immediately recoverable by the Debtors in cash upon written request; (b) upon recovery of such payment by the Debtors, the prepetition claim of such Critical Vendor shall be reinstated as if the payment had not been made; and (c) if an outstanding postpetition balance is due from the Debtors to such Critical Vendor, the Debtors are authorized, but not required, to apply any payment made pursuant to this Final Order to such outstanding postpetition balance, and such Critical Vendor shall be required to repay to the Debtors any paid amount that exceeds such then outstanding postpetition balance.

2

4.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against any Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

5.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized, but not directed, to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order, without any duty of further inquiry and without liability for following the Debtors' instructions.

6.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these cases with respect to prepetition amounts owed in connection with the relief granted herein.

7.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

8.      The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of points and authorities in connection with the Motion is waived.

3

9.      Notice of the Motion as described therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

12.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated:  _____
White Plains, New York                    _____
                                          UNITED STATES BANKRUPTCY JUDGE

4